**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
------------------------------------- X
SECURITIES AND EXCHANGE              :
  COMMISSION,
                                     :
          Plaintiff,
                                     :
     v.
                                     :
TELEXFREE, INC.,
TELEXFREE, LLC,                      :
JAMES M. MERRILL,
CARLOS N. WANZELER,                  :
STEVEN M. LABRIOLA,
JOSEPH H. CRAFT,                     :
SANDERLEY RODRIGUES DE
  VASCONCELOS,                       :      Case No. 14-cv-11858-NMG
SANTIAGO DE LA ROSA,
RANDY N. CROSBY, and                 :
FAITH R. SLOAN,
                                     :
          Defendants,
                                     :
     and
                                     :
TELEXFREE FINANCIAL, INC.,
TELEXELECTRIC, LLLP and              :
TELEX MOBILE HOLDINGS, INC.,
                                     :
          Relief Defendants.         :
------------------------------------- X
```

**DEFENDANT RANDY CROSBY'S**
**OPPOSITION TO PLAINTIFF'S EMERGENCY *EX PARTE***
**MOTION FOR A TEMPORARY RESTRAINING ORDER, ORDER**
**FREEZING ASSETS AND ORDER FOR OTHER EQUITABLE RELIEF**

Defendant Randy Crosby ("Mr. Crosby") [1] submits the following Opposition to the Securities and Exchange Commission's ("SEC") Emergency Motion for a Temporary Restraining Order, Order Freezing Assets and Order for Other Equitable Relief. (ECF Doc. Nos. 4-5).

**INTRODUCTION**

On April 15, 2014, the SEC filed a Complaint against TelexFree, Inc., TelexFree, LLC and its principals. Also named in the lawsuit were four alleged "primary promoters" of TelexFree, including Mr. Crosby. The gravamen of the complaint is that Mr. Crosby was knowingly involved in a pyramid scheme. Mr. Crosby is not, nor is he alleged to be, a principal of TelexFree, nor is he alleged to have knowledge of the financial workings of the company. Rather, he is identified merely as a promoter – someone engaged in selling the product of the company. In this case, Mr. Crosby sold a Voice Over Internet Protocol ("VoIP") product that he used and knew to be a real, useful, functioning product.

The SEC also filed an Emergency Motion for Temporary Restraining Order, Order Freezing Assets and Order for Other Equitable Relief, seeking, among other things, to freeze the defendants' assets and to require the defendants to submit a complete accounting of investor funds and other assets in their possession.

After an *ex parte* hearing on April 16, 2014, Judge Casper granted the relief sought by the SEC and entered the Temporary Restraining Order now at issue.

Also, on April 15, 2014, federal agents from the FBI and the Department of Homeland Security reportedly executed a search warrant at the Marlborough, Massachusetts offices of TelexFree. Beth Healy, *TelexFree Mass. office raided in Internet fraud probe*, BOSTON GLOBE,

---

[1] The SEC incorrectly refers to Mr. Crosby as "Randy N. Crosby." Mr. Crosby has no middle initial or middle name.

April 17, 2014 (available at <http://www.bostonglobe.com/business/2014/04/16/feds-raid-telexfree-offices-widening-internet-fraud-probe/f1y9i2vmqNvdEtZCkcygOM/story.html>).

Mr. Crosby is now exercising his right to challenge the Order entered by Judge Casper and seeking to have the Temporary Restraining Order vacated.  The record before the Court includes virtually no evidence indicating that Mr. Crosby knowingly participated in any sort of scheme and it is therefore highly unlikely that the SEC will be able to prevail on the merits. Further, this Order is highly prejudicial to Mr. Crosby as the asset freeze literally prevents Mr. Crosby from spending even one penny of his money for things as basic as food, rent and the other necessities of life and similarly precludes him from spending the funds necessary to mount an adequate legal defense.   The accounting sought by the SEC raises serious Fifth Amendment concerns as it requires him to provide testimonial evidence during the course of a federal investigation, without leaving him enough time to  understand the scope of the federal inquiry and therefore make an informed decision about whether to invoke his privilege against self incrimination or to produce the accounting.

## THE SEC'S FACTUAL SHOWING IS WOEFULLY INADEQUATE

The evidence offered against Mr. Crosby is shockingly thin. Indeed, the SEC, in more than 30 pages of briefing (Plaintiff's Emergency *Ex Parte* Memorandum in Support of its Motion for a Temporary Restraining Order, Order Freezing Assets and Order for Other Equitable Relief), five declarations and hundreds of pages of exhibits, makes only the following verified statements relevant to Mr. Crosby:

- In the portion of the Motion that identifies the defendants, Mr. Crosby is described as follows: "Mr. Crosby, age 51, lives in Alpharetta, Georgia. [SEC Ex. I3.]  He is one of the most successful promoters of Telexfree and has appeared in TelexFree promotional videos that have been posted on the internet. [Huntington Decl., ¶5, ##4 & 14.].  He has also promoted TelexFree through a website called "everybodygetspaidweekly.biz". [SEC Ex. E1.]

3

      Exhibit I3 is a credit check record that shows his age and town and state of residence. Exhibit E1 is a listing that shows only that a different website called "everyonegetspaidweekly.biz" was registered to Mr. Crosby and that he was the billing contact. There is no support at all for the contention that he is one of the most successful promoters of Telexfree.

- The Motion also states that he has appeared in TelexFree promotional videos posted on the Internet, including an April 20, 2013 video [Huntington Decl., ¶5, ##4 & 14.], in which he allegedly made the comments set forth below. Notably, none of these comments indicates that Mr. Crosby was aware that TelexFree was anything other than a legitimate business.

    o "What if you were with a company that would pay you just to advertise the service? ... They're paying us to advertise the service. It's just that simple."

    o TelexFree members do not have to "worry about selling to the public."

    o "It takes less than thirty seconds to place each ad. Most people do it in 15 to 20 seconds."

    o "This company has a joint venture with Best Western."

    o "Dozens and dozens of people have become millionaires because of this."

    o  "How deep does it go? It pays down to infinity."

      Mr. Crosby is not referenced in a single other exhibit or supporting declaration. The above is the total sum of the <u>evidence</u> against Mr. Crosby in this Emergency Motion, and the accompanying exhibits, as well as the Complaint. Essentially it includes only his name, age, address, employment, and innocuous public statements reflecting what he thought to be accurate information.

      The SEC makes other allegations relevant to Mr. Crosby in an attempt to satisfy the legal requirement for injunctive relief but these allegations, listed below, are not supported by one scintilla of evidence. It in fact appears that the SEC has attempted to create the illusion of a case against Mr. Crosby by referring repeatedly to the defendants as a group rather than undertaking an individualized assessment of the evidence.

4

- The SEC alleges that Mr. Crosby was a "primary promoter" of TelexFree and "one of the most successful promoters of TelexFree," [Compl. ¶ 19, SEC Br. At 5] but cites nothing in support of those allegations. Further, the SEC adduces nothing to distinguish Mr. Crosby from the hundreds of other TelexFree promoters who posted videos on the Internet.[2]

- The SEC claims that Mr. Crosby and the other defendants acted with scienter because they "knew that that TelexFree was not a legitimate VoIP business but was, instead a Ponzi scheme . . . [and] a pyramid scheme." [SEC Br. in Supp. of Mot. for TRO at 24 ("SEC Br.") (ECF Doc. No. 5).] However, the SEC offers nothing beyond this conclusory statement and certainly *no evidence* that Mr. Crosby knew or even should have known that TelexFree was a Ponzi or Pyramid scheme. Mr. Crosby believes that TelexFree was a legitimate VoIP business. He himself used and valued the product.

- The SEC contends that Mr. Crosby and the other defendants would "dissipate or conceal their assets during this litigation." [SEC Br. at 26.] However, the SEC makes no showing that *Mr. Crosby* has dissipated or concealed assets, or would do so absent entry of an injunction.

- The SEC claims that "review of documents has evidenced that millions of dollars have been transferred from TelexFree accounts to Individual Defendant's and Relief Defendant's accounts." [SEC Br. at 25; Complaint at ¶ 52.] But, the SEC offers no documents showing that *Mr. Crosby* has received any such monies.

Notably, the SEC makes no suggestion, even in a conclusory way, that Mr. Crosby knew about the accounting being done at TelexFree, which information would be critical to him having the ability to conclude that TelexFree was a scheme.

The few pieces of "evidence" relevant to Mr. Crosby and the conclusory, wholly unsupported additional statements are insufficient to warrant injunctive relief, particularly a total asset freeze and expedited accounting, which leaves Mr. Crosby no time to evaluate his status in the criminal investigation.

---

[2] For example, as of April 23, 2014, a search of YouTube yields 363,000 videos. *See* <http://www.youtube.com/results?search_query=telexfree>.

**LEGAL STANDARD**

A preliminary injunction is an "extraordinary and drastic remedy." *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011) (citations omitted). To obtain a temporary restraining order or a preliminary injunction, the SEC must establish that (1) it is has a likelihood of success on the merits, (2) it will suffer irreparable harm if the injunction is not granted, (3) the injury to the moving party outweighs any harm which granting the injunction would impose on the non-moving party, and (4) the public interest will not be adversely affected by granting the injunction. *Sanchez v. Esso Standard Oil Co.*, 572 F.3d 1, 14 (1st Cir. 2009); *Ross-Simmons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 15 (1st Cir. 1996). In all cases, "the burden of providing a factual basis sufficient to justify a preliminary injunction rests with the party seeking the injunction." *U.S. Elec. Serv., Inc. v. Schmidt*, No. 12-10845-DJC, 2012 WL 2317358, at *1 (D. Mass. June 19, 2012).

**ARGUMENT**

**I.  THE SEC HAS NOT ADDUCED EVIDENCE NECESSARY TO SUPPORT THE "EXTRAORDINARY AND DRASTIC" RELIEF THAT IT SEEKS**

**A.  The SEC Is Unlikely To Succeed On The Merits Of Its Claims Against Mr. Crosby Because It Offers No Cognizable Evidence Of His Scienter**

In the First Circuit, "the probability of success component . . . has been regarded as crucial in determining the propriety of injunction relief." *Lancor v. Lebanon Housing Authority*, 760 F.2d 361, 362 (1st Cir. 1985) (citations omitted); *see also New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002); *Knights of Columbus v. Town of Lexington*, 124 F. Supp. 2d 119, 122 (D. Mass. 2000). As the SEC has not established a probability of success, the SEC's Motion should be denied.

For the SEC to prevail on its claim that Mr. Crosby violated Section 10(b) of the Exchange Act and Rule 10b–5, it must prove six elements, including scienter. *Mississippi Pub.*

6

*Employees' Ret. Sys. v. Boston Scientific Corp.*, 649 F.3d 5, 20 (1st Cir. 2011) (internal quotations omitted). The SEC also must prove scienter as to Mr. Crosby's purported violations of Section 17(a) of the Securities Act.[4]

The First Circuit holds that "proving scienter requires a showing of either conscious intent to defraud or a high degree of recklessness." *Id.* (internal quotations omitted). "Reckless in this context means a highly unreasonable omission, involving not merelysimple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious the actor must have been aware of it." *Id.* (internal quotations omitted).

The SEC does not introduce any evidence of Mr. Crosby's purported intent to defraud or recklessness. Instead, in bare bones and conclusory fashion, the SEC claims that all Defendants:

> knew that that TelexFree was not a legitimate VoIP business but was, instead a Ponzi scheme. Defendants did not disclose that TelexFree was a pyramid scheme. Instead, they repeatedly represented that it was a legitimate company to get more investors to invest.

[SEC Br. at 23-24.]  Remarkably, the above quote constitutes the entirety of the SEC's claims *and evidence* with regard to scienter.  Conclusory allegations such as these, absent more, cannot support a finding that Mr. Crosby was acting with the scienter necessary for the SEC to meet its burden of proof.  *SEC v. Ficken*, 546 F.3d 45, 51 (1st Cir.2009); *see also, e.g.*, *Ezra Charitable Trust v. Tyco Intern., Ltd.*, 2005 WL 2127619, at *4 (D.N.H. Sept. 2, 2005), *aff'd*, 466 F.3d 1 (1st Cir. 2006) ("Plaintiffs' allegations rest primarily on "catch-all allegations" that [the individual defendants'] personal and professional fortunes were personally tied to the fortunes of [the corporate defendant] and that they therefore had the motive to commit fraud. These types of

---

[4] Scienter must be proved to sustain violations of Section 17(a)(1) of the Securities Act. In contrast, violations of Sections 17(a)(2) and (3) of the Securities Act require only proof of negligence. However, in this case, the SEC makes no allegation of negligence and relies solely upon the purported "ample evidence" of scienter to support its Section 17(a) claim.

claims have been rejected by prior courts . . . ."). The SEC cites no affidavit, document, or testimony that supports the conclusion that Mr. Crosby knew or even should have known that TelexFree was a Ponzi scheme, a Pyramid scheme or anything but a legitimate business enterprise.

Moreover, the statements attributed to Mr. Crosby in an April 20, 2013 video do not suggest that Mr. Crosby knew TelexFree to be fraudulent. To the contrary, the more reasonable inference is that Mr. Crosby made these public statements about the legitimacy of TelexFree *because he believed them to be true*. In any event, even assuming *arguendo* that Mr. Crosby's alleged statements in the April 20, 2013, video were false, their falsity alone cannot prove scienter. If that were so, the requirement that the SEC prove scienter would be rendered meaningless. *See Geffon v. Micrion Corp.*, 249 F.3d 29, 36 (1st Cir. 2001) ("At the pleading stage, an allegation that defendants had the motive and opportunity to make false or misleading statements is insufficient to support the 'strong inference' of scienter required after the PSLRA" (citation omitted)); *SEC v. Collins & Aikman Corp.*, 524 F. Supp. 2d 477, 487-88 (S.D.N.Y. 2007) ("[E]ven though the PSLRA does not apply to actions brought by the SEC, the SEC is subject to Rule 9(b) and must therefore plead a 'strong inference' of scienter."); *see also In re Credit Suisse First Boston Corp.*, 2005 WL 852455, at *8 (D. Mass. March 31, 2005) ("[S]imply establishing a motivation to make false and misleading statements, regardless of the strength of the inferences to be drawn, is not enough to establish scienter." (citing *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 197 (1st Cir. 1999) ("[W]e caution that catch-all allegations that defendants stood to benefit from wrongdoing and had the opportunity to implement a fraudulent scheme are [not] sufficient." (citation omitted))).

8

Absent any evidence to support its allegations of actual knowledge by Mr. Crosby, the SEC cannot succeed on the merits of its claims. Accordingly, the SEC's Motion should be denied and the Temporary Restraining Order should be dissolved.

### B. The SEC Has Failed To Demonstrate That It Would Suffer Irreparable Harm Absent Injunctive Relief

The SEC also fails to make the showing of irreparable harm required to obtain a preliminary injunction. As the First Circuit recently acknowledged, "the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Voice of the Arab World*, 645 F.3d at 32. "[T]he burden of demonstrating that a denial of interim relief is likely to cause irreparable harm rests squarely upon the movant." *Gonzalez-Droz v. Gonzalez-Colon*, 573 F.3d 75, 79 (1st Cir. 2009). This requires a positive showing "that irreparable injury is *likely* in the absence of an injunction." *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A finding of irreparable harm "must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004). Where the movant relies on such remote contingencies, courts have held that "speculative injury does not constitute a showing of irreparable harm." *Pub. Serv. Co. of New Hampshire v. Town of W. Newbury*, 835 F.2d 380, 383 (1st Cir. 1987).

The SEC claims that irreparable harm is likely because "review of documents has evidenced that millions of dollars have been transferred from TelexFree accounts to Individual Defendant's and Relief Defendant's accounts." [SEC Br. at 25; Complaint at ¶ 52.] The SEC adduces no evidence that *Mr. Crosby* has made or received such transfers or is likely to do so. In fact, the SEC has made no showing regarding the amount of money made or received by Mr. Crosby throughout the time he worked with TelexFree, perhaps because that figure would not

reach even one million, much less millions and millions. That the principals of TelexFree allegedly transferred "millions of dollars" does not evidence the past or future conduct of Mr. Crosby, a mere promoter.

Moreover, the SEC's stated concern that all defendants would "dissipate or conceal their assets during this litigation," is again unsupported by any fact suggesting that Mr. Crosby has dissipated or concealed assets, or would do so absent entry of a preliminary injunction. The risk that funds would be unavailable from Mr. Crosby to satisfy any ultimate monetary judgment against him exists for "virtually every person who sues another for money damages" and such a claim "cannot conceivably be enough to justify the issuance of a prejudgment injunction." *Charlesbank Equity Fund II*, 370 F.3d at 162-63.

For the independent reason that the SEC has failed to demonstrate irreparable harm, the Court should deny its motion and dissolve the existing temporary restraining order.

    **C.**    **The Balance of Harms Favors Mr. Crosby**

Plaintiff has also failed to meet its burden to prove that the balance of harms weighs in favor of granting the requested injunctive relief. The harm caused to Mr. Crosby by a total asset freeze and a forced accounting before he has had the chance to evaluate his position in a criminal investigation is immeasurable and far outweighs any harm to the SEC caused by the alternative. If the SEC ultimately prevails, Mr. Crosby will be obligated to satisfy any judgment whether or not he has the funds immediately available.

The Order advanced by the SEC bars Mr. Crosby from spending any of his personal assets, regardless of the connection between those assets and the alleged fraud. Mr. Crosby would be required to "hold and retain funds and other assets . . . in whatever form such assets may presently exist and wherever located" and will "restrain [Mr. Crosby] from taking any actions to withdraw, sell, pay, transfer . . . or diminish the value of in any way (including, but not

limited to, making any charges on any credit card . . . ), any funds and other assets; and that such funds and assets are hereby frozen." Temporary Restraining Order at § IV.A.

The Order is so onerous that it does not except payments for housing, food, insurance, car, or any other basic living expense. Moreover, the Order effectively bars Mr. Crosby from paying legal counsel and mounting a proper defense to this action. *Id.* § IV.B. All of this following incredibly thin allegations against Mr. Crosby, before there has been any finding of wrongdoing on his part and in the face of a federal search warrant executed at TelexFree. The idea that a man can be deprived of the ability to pay his most basic expenses or fund for a legal defense simply on the basis of unsupported, unverified allegations is offensive and reeks of a mean spirited interest in gaining a tactical advantage during litigation. As set forth above, the SEC offers no factual support for its claim that Mr. Crosby has tried to, or will in the future, dissipate his assets in a manner that would warrant an asset freeze. The unsubstantiated, speculative concern that Mr. Crosby may dissipate assets that could satisfy a potential monetary judgment is outweighed by the significant harm caused by a total freeze of Mr. Crosby's assets. Further, there is an obvious risk to forcing him to make an expedited accounting before he has enough information to ascertain the status of the ongoing criminal investigation.

## II.      ORDERING CROSBY TO PROVIDE AN IMMEDIATE ACCOUNTING WOULD PREJUDICE HIS ABILITY TO INVOKE HIS FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION

The Commission has demanded, and the existing Temporary Restraining Order requires, that Mr. Crosby provide an immediate accounting of payments made on his TelexFree business and of all assets and accounts held in his name, whether or not those assets or accounts relate to TelexFree. Temporary Restraining Order at § VI. Mr. Crosby may refuse to comply with the Commission's request by invoking his Fifth Amendment right against self-incrimination. But the invocation of the Fifth Amendment could be used against him later. As a result, it is

11

important that he make a thoughtful decision about whether to provide the accounting or exercise his right against self incrimination. In order for this decision to be well made, Mr. Crosby requires additional time to determine his status with the U.S. Attorney's Office. Although undersigned counsel has made calls to the U.S. Attorney's Office, no meaningful discussions have yet taken place. Therefore, Mr. Crosby requires additional time to determine whether he should invoke the Fifth Amendment or provide the sought-after accounting.

The privilege created by the Self-Incrimination Clause of the Fifth Amendment protects a person "against being incriminated by his own compelled testimonial communications." *Doe v. United States*, 487 U.S. 201, 207 (1988). "[A] person is compelled to be a 'witness' against himself" if he is forced to make a communication, oral or written, that "explicitly or implicitly, relate[s] a factual assertion or disclose[s] information." *Id.* at 210. The privilege "protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used" *Id.* at 211 (quoting *Kastigar v. United States*, 406 U.S. 441, 445 (1972)). Accountings like the one SEC seeks here have been denied in similar circumstances. "To compel [Mr. Crosby] to 'speak' in this civil proceeding by ordering an accounting of alleged illicit funds would directly impinge [his] right against self-incrimination." *SEC v. Rehtorik*, 755 F. Supp. 1018, 1019 (S.D. Fla. 1990) (citing *Maness v. Meyers*, 419 U.S. 449, 461 (1975) and *Hoffman v. United States*, 341 U.S. 479, 486 (1951)); *see also, e.g.*, *SEC v. Simpson*, 885 F.2d 390, 393 n.3 (7th Cir. 1989).

Here, the proposed order for an accounting would compel Mr. Crosby to immediately provide numerous factual statements: regarding all fund transfers from investors or promoters; identifying any person or entity holding assets derived from these transactions and the reason each received the assets; identifying any of Mr. Crosby's assets worth at least $500 (without

regard to whether those assets were derived from his TelexFree business); and identifying any of Mr. Crosby's financial institution accounts from January 1, 2012 to the present (without regard to whether those accounts relate in any way to his TelexFree business). Temporary Restraining Order at § VI. Mr. Crosby, given some additional time, may decide to prepare the accounting. However, forcing him to do it without sufficient information about the ongoing criminal investigation would improperly compel Mr. Crosby to disclose the contents of his own mind in the form of factual assertions regarding his TelexFree transactions.

Requiring Mr. Crosby to immediately prepare an accounting that could be used against him or to refuse to prepare the accounting which could also then be used against him is patently unfair. The fact that the Temporary Restraining Order which requires the accounting is supported by virtually no evidence against Mr. Crosby makes the dilemma even more troubling. No defendant in civil litigation should be forced to make this important decision under such radical and artificial time constraints, particularly based on a record this thin.

## CONCLUSION

At bottom, the SEC's Motion is based upon conclusory allegations of scienter and irreparable harm, unsupported by affidavits, testimony or documents of any kind. The Court should not order sweeping injunctive relief on the basis of this paltry record. For the foregoing reasons, the Temporary Restraining Order should be dissolved and the SEC's Motion and all relief it seeks should be denied.

Dated: April 24, 2014

Respectfully Submitted,

RANDY CROSBY

By his attorneys

 /s/ Allison D. Burroughs
Allison D. Burroughs (BBO # 609346)
NUTTER, MCCLENNEN & FISH, LLP
155 Seaport Blvd
Boston, MA 02210
(617) 439-2684
aburroughs@nutter.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 24, 2014, this document (filed through the ECF system) will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Allison D. Burroughs

2510465.3