UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | No. 1:14-CV-11858-NMG |
| v. | ] | |
| | ] | |
| TELEXFREE, INC., | ] | |
| TELEXFREE LLC, | ] | |
| JAMES M. MERRILL, | ] | |
| CARLOS N. WANZELER, | ] | |
| STEVEN M. LABRIOLA, | ] | |
| JOSEPH H. CRAFT, | ] | |
| SANDERLEY RODRIGUES DE VASCONCELOS, | ] | |
| SANTIAGO DE LA ROSA, | ] | |
| RANDY N. CROSBY and | ] | |
| FAITH R. SLOAN, | ] | |
| | ] | |
| Defendants, | ] | |
| | ] | |
| and | ] | |
| | ] | |
| TELEXFREE FINANCIAL, INC., | ] | |
| TELEXELECTRIC, LLC and | ] | |
| TELEX MOBILE HOLDINGS, INC., | ] | |
| | ] | |
| Relief Defendants. | ] | |

_____ ]

**MOTION OF THE UNITED STATES (DEPARTMENT OF JUSTICE) FOR LEAVE TO
INTERVENE AND FOR A STAY OF DISCOVERY PENDING RESOLUTION OF
PARALLEL CRIMINAL PROCEEDINGS, AND MEMORANDUM IN SUPPORT**

**INTRODUCTION**

The U.S. Department of Justice ("government") respectfully moves to intervene in this

action for the limited purpose of moving to stay discovery (only) pending resolution of a federal

criminal case that addresses the same alleged misconduct.

Both the government and the U.S. Securities & Exchange Commission ("SEC") have been investigating TelexFree, Inc., and related entities ("TelexFree"), on the suspicion that TelexFree was a pyramid scheme.  In April 2014, the SEC filed this action.  In May 2014, the government arrested TelexFree's former President, James Merrill, on a complaint.  In July 2014, a grand jury indicted Merrill and TelexFree's other principal, Carlos Wanzeler.

A cursory review of the government's indictment and the SEC's complaint shows that the two cases are founded on the same set of facts.  Consequently, a stay of discovery on the civil side (but not of unrelated motion practice) is justified for several reasons:

*First*, without a stay, Merrill and perhaps Wanzeler[1] – charged in both actions – would use the civil discovery process in a manner that impairs proper administration of the criminal case.  This is not a theoretical concern:  for example, depositions and interrogatories targeting the key percipient witnesses in both matters would nullify the *Jencks* Act and most other criminal rules; broadly disclose the essentials of the government's trial case at an early stage, thus allowing the defense to tailor factual and legal defenses to fit the anticipated proof; and needlessly harass and intimidate the witnesses themselves, who are civilians (not law enforcement personnel).  As discussed further below, courts repeatedly recognize that the disparities between civil and criminal discovery justify staying civil proceedings.  *See, e.g., United States v. Mellon Bank, N. A.*, 545 F.2d 869, 872-873 (3rd Cir. 1976) (affirming stay, noting that "the similarity of the issues left open the possibility that [target] might improperly exploit civil discovery for the advancement of his criminal case"); *Gov. of Fed. Reserve v. Pharaon*, 140 F.R.D. 634, 639 (S.D.N.Y. 1991) ("A litigant should not be allowed to make use

---

[1] Wanzeler is currently a fugitive living in Brazil.  He has not appeared in the criminal matter.

of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions

on criminal discovery.") .

    *Second*, a stay of discovery would create genuine efficiencies.  Realistically, the criminal

case will be resolved before this one, and that resolution will dramatically impact the result here.

For example, a conviction in the criminal case could have an estoppel effect as to the civil

liability of Merrill and Wanzeler (TelexFree itself has already effectively conceded liability in its

answer to the complaint).  *See, e.g., Emich Motors Corp. v. Gen. Motors Corp*., 340 U.S. 558,

568-69 (1951) ("It is well established that a prior criminal conviction may work an estoppel in

favor of the government in a subsequent civil proceeding.").  At a minimum, hashing out the

criminal case before this one will greatly simplify the issues to be resolved here, even if any civil

discovery ultimately occurs.[2]

    *Third*, and on a related note, giving precedence to the criminal case, far from prejudicing

any defendant, will save the individual civil defendants a lot of money.  Several defendants to

this action – including Merrill and Wanzeler – have expressed real concerns about the

tremendous cost of defending the enforcement proceedings arising from TelexFree's collapse.

Merrill's and Wanzeler's attorneys both recently estimated that it will cost over $1,000,000 to

defend the criminal case *alone*; Merrill has even filed a motion in the criminal case demanding

access to seized funds to pay for his defense.  Temporarily staying discovery here will greatly

---

[2] *See, e.g., In re Grand Jury Proceedings (Williams)*, 995 F.2d 1013, 1018 n.11 (11th Cir. 1993)
("Although stays delay civil proceedings, they may prove useful as the criminal process may determine
and narrow the remaining civil issues."); *Texaco, Inc. v. Borda*, 383 F.2d 607, 609 (3rd Cir. 1967)
(affirming stay of civil action in part because "the trial of the criminal case [might] reduce the scope of
discovery in the civil action . . . [a]nd . . . perhaps might also simplify the issues"); *Brock v. Tolkow*, 109
F.R.D. 116, 120 (E.D.N.Y. 1985) ("[T]he resolution of the criminal case might reduce the scope of
discovery in the civil case or otherwise simplify the issues.").

alleviate the financial pressure on all individual defendants, while still allowing them to litigate, *e.g.*, pending dispositive motions or future motions challenging asset freezes.

*Fourth*, nearly all parties assent to the stay.  The SEC, in keeping with long-standing practice, takes no position.  Of the defendants, seven of nine assent to a stay of discovery (but not other motion practice):  TelexFree and related entities, Carlos Wanzeler, Steven Labriola, Joseph Craft, Sanderley Rodrigues de Vasconcelos, Santiago de la Rosa, and Randy Crosby. Faith Sloan declined to support a stay at this stage because of her pending motion to dismiss, but would consider it again after her motion is resolved.

That leaves defendant James Merrill, who is considering the government's proposal and reserves the right to oppose.  Merrill is the only defendant to take this position, which makes the government's point:  Merrill is also the only defendant who is also actively litigating in the criminal case.  The substantial cost of civil discovery is well-known and Merrill has asserted that he has no money for legal fees.  If upon reflection Merrill ultimately does oppose a stay, the potential windfall of civil discovery is the likely reason.  A strong desire to quickly vindicate his rights in this action would not be the reason, since Merrill answered the complaint (as opposed to moving to dismiss) and suggested a trial date in March 2016.  *See Joint Statement and Discovery Plan* at 10-11 (Aug. 28, 2014; docket entry # 244).

A stay of discovery is in the public interest, it is the more efficient use of judicial and litigant resources, and it will not prejudice any defendant in either action.

## BACKGROUND

In or about June 2013, the government, having received a lead from the U.S. Department of Homeland Security, began investigating TelexFree, James Merrill and Carlos Wanzeler on the suspicion that TelexFree was a pyramid scheme.  TelexFree sold a real product – an Internet-based telephone service – but operated on a "multi-level marketing" sales model that paid the company's agents a substantial return without ever requiring them to sell the phone service.  As a result, it appeared that the company derived most of its revenue from people "buying in" as company promoters.  TelexFree then used this money to meet its commission and bonus obligations to its growing pool of pre-existing promoters.

Meanwhile, about six months later, in January 2014 the SEC opened its own investigation of TelexFree, also on the suspicion that TelexFree was a pyramid scheme and that it was selling unregistered securities to its promoters while making affirmative misrepresentations and material omissions about TelexFree's business.

The government's investigation proceeded – it thought covertly – until Monday, April 14, 2014.  On that day, in a surprise move, TelexFree filed for bankruptcy protection in the District of Nevada.  That same day, TelexFree's then-counsel called the U.S. Attorney's Office.  On April 15, 2014, fearing destruction of evidence, the government executed search warrants at TelexFree's headquarters in Marlborough, Massachusetts, and at two businesses housing TelexFree's corporate servers.  As to the SEC, it filed a complaint and motion for a temporary restraining order to freeze assets belonging to TelexFree, Merrill and Wanzeler and other principals, and several of TelexFree's most successful promoters.  Later that day, Wanzeler fled to Canada and from there to Brazil.

The government did not file criminal charges until some time later:  on May 9, 2014, Merrill was arrested on a complaint charging him and Wanzeler with conspiracy to commit wire fraud.  About two months later, on July 23, 2014, a grand jury sitting in Worcester, Massachusetts, indicted Merrill and Wanzeler on one count of conspiracy to commit wire fraud and eight counts of substantive wire fraud, all arising from their role in organizing and running TelexFree between about Feburary 2012 and April 2014, a period during which they took in hundreds of millions of dollars from thousands of TelexFree promoters.

The government's indictment is narrower than the SEC's civil complaint of April 2014: while the government indicted only Merrill and Wanzeler, who ran the company, the SEC sued several TelexFree entities, Merrill and Wanzeler, Steven Labriola (another TelexFree executive), Joseph Craft (TelexFree's outside accountant), and certain successful TelexFree promoters.  The two enforcement actions, however, cover identical facts – they cover same time frame (the span of TelexFree's U.S.-based business); target the same alleged misconduct (operation of TelexFree as a pyramid scheme that lured in investors); and rely on the same witnesses, documentary evidence, and financial data seized from TelexFree.

## ARGUMENT

## I. THE COURT SHOULD ALLOW THE GOVERNMENT TO INTERVENE FOR THE LIMITED PURPOSE OF MOVING FOR A STAY

Under Rule 24(a) (2) of the Federal Rules of Civil Procedure, anyone may intervene as of right when the applicant "claims an interest relating to the property or transaction which is the subject of the action" and the applicant is so situated that "disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest . . . ."  *See also*

*Intl. Paper Co. v. Inhabitants of Jay, Maine,* 887 F.2d 338, 342 (1st Cir. 1989) (discussing standard).[3]

The government (the Department of Justice, through the United States Attorney's Office), has a direct and substantial interest in the subject matter of this litigation, which is the same subject matter as that underlying the government's prosecution in *United States v. James Merrill & Carlos Wanzeler*, No. 14-CR-40028-TSH.  Specifically, the government has a "discernible interest in intervening in order to prevent discovery in a civil case from being used to circumvent the more limited scope of discovery in the criminal matter." *U.S. Sec. & Exch. Comm. v. Chestman*, 861 F.2d 49, 50 (2nd Cir. 1988) (denying appeal of district court order that allowed intervention and stayed SEC enforcement action in favor of criminal case).  Without intervention the government cannot protect its interest in the criminal prosecution, because it cannot weigh in on whether civil discovery should proceed.  No current party to the civil action is in a position to do so either.

The Court can also permit intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(2).  To intervene under this section, the government must establish that there is a common question, an independent ground for jurisdiction, and a timely motion.  If these conditions are met, the district court has the discretion to allow intervention, and should consider whether intervention will unduly delay or prejudice adjudicating the civil case and whether the interests of the intervener are already adequately represented by the existing parties.  *See id.; see also, e.g., In re Acushnet River & New Bedford Harbor Proceedings*, 712 F.Supp.2d 1019, 1023 (D. Mass. 1989)

---

[3]  "Thus, a party seeking intervention of right under Rule 24(a)(2) must demonstrate three things: 1) that it has a direct and substantial interest in the subject matter of the litigation; 2) that its ability to protect the interest may be impaired if it is not allowed to intervene; and 3) that its interest will not be adequately represented by an existing party. *See, e.g., Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1984)." *Id.*

(discussing standard); *Bureerong v. Uvawas*, 167 F.R.D. 83, 85-86 (C.D. Cal. 1996) (permitting government to intervene under Rule 24(b)(2) and staying civil discovery pending resolution of criminal case).

Courts regularly recognize that federal prosecutors have a substantial interest in intervening in civil actions to protect the interests of the United States in securing convictions in criminal cases. *See, e.g., Chestman*, 861 F.2d at 50.  "It is well established that the United States Attorney may intervene in a federal civil action to seek a stay of discovery when there is a parallel criminal proceeding, which is anticipated or already underway, that involves common questions of law or fact." *U.S. Sec & Exch. Comm. v. Downe*, 1993 WL 22126, at *11 (S.D.N.Y. 1993) (citations omitted).

Because civil discovery may, as a practical matter, impair the government's ability to protect its interests in the enforcement of federal criminal law, the government respectfully seeks leave to intervene for the purpose of arguing for a stay.

## II.     THE COURT SHOULD TEMPORARILY STAY DISCOVERY TO PROTECT THE INTEGRITY OF THE CRIMINAL ACTION

It is "clearly within the power of the district court to balance 'competing interests' and decide that judicial economy would best be served by a stay of civil proceedings." *Mellon Bank*, 545 F.2d at 872-873 (affirming stay); *see also Microfinancial, Inc. v. Premier Holidays Intl., Inc.*, 385 F.3d 72, 77 (1st Cir. 2004) ("It is apodictic" that federal courts have the inherent power to stay civil proceedings in deference to criminal matters).

Courts generally consider certain factors when deciding whether to stay a civil case pending resolution of a criminal matter, including (a) the extent to which the civil and criminal cases overlap; (b) the public interest; (c) any potential prejudice to the civil parties if that matter is stayed; (d) the court's interest in managing dockets and resources; and (e) the current status of

the criminal case.[4]  In *Microfinancial*, a case in which the district court denied defendants'

motion to stay a civil trial because of a rumored grand jury investigation, the First Circuit

articulated the relevant factors similarly, though some were specific to the facts of that case:

whether delay would prejudice the civil litigants; potential prejudice to the party that is the

defendant in both the civil and criminal  matters (defendant had moved for the stay); impact on

judicial resources; interests of any third parties; the public interest; the status of the two matters;

and whether the litigants are acting in good faith.  *See* 385 F.3d at 78.

### A.    This Action Should be Stayed Because of the Near Total Overlap of Facts and Evidence

"[T]he most important factor [in ruling on a motion to stay civil proceedings because of a

pending criminal case] is the degree to which the civil issues overlap with the criminal issues."

*U.S. Sec. & Exch. Comm. v. Nicholas*, 569 F.Supp.2d 1065, 1070 (C.D. Cal. 2008) (allowing

DOJ intervention and staying SEC action pending resolution of criminal case; citations omitted);

*see also, e.g*., *Walsh Secs., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F.Supp.2d 523, 527 (D.N.J. 1998)

(making same point); *In re Adelphia Comm. Sec. Litig*., 2003 WL 22358819, *6-7 (E.D. Pa. May

13, 2003) (same; citing risk of inconsistent judgments in civil and criminal proceedings with

overlapping facts).

As noted above, while the government and SEC started their investigations, and brought

charges, at different times, the substance of the two actions is identical:  both are predicated on

the allegation that TelexFree was a pyramid scheme, and that its principals deceived the

investing public as to the true nature of the enterprise.  To this the SEC action adds the conduct

---

[4] *See, e.g., Keating v. Office of Thrift Superv.*, 45 F.3d 322, 324–25 (9th Cir. 1995); *Chao v. Fleming*, 498 F.Supp.2d 1034, 1041 (W.D. Mich. 2007); *In re Adelphia Comm. Sec. Litig*., 2003 WL 22358819, *7 (E.D. Pa. May 13, 2003);  *U.S. Sec. & Exch. Comm. v. HealthSouth Corp.*, 261 F.Supp.2d 1298, 1326 (N.D. Ala. 2003); *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 74 (W.D.N.Y. 2003); *Walsh Sec. v. Cristo Prop. Mgt.*, 7 F.Supp.2d 523, 526-27 (D.N.J. 1998).

of certain successful TelexFree promoters, who were themselves allegedly responsible for bringing many new promoters into the fold.  (For its part, the government's indictment did not target these promoters, instead choosing to focus on those who ran the company.)

Consequently, the two cases will rely on identical witnesses and physical evidence.  In both matters a handful of TelexFree executives and outside consultants (about 7-10 people) will be central witnesses; the same TelexFree financial data, housed on the same company servers, will be used by lay and expert witnesses to argue whether TelexFree did indeed operate as a pyramid scheme; and the same emails, letters, web pages, business presentations and other defendant statements will be used to argue misrepresentations, material omissions, and intent or lack of it.  The *only* variation will be that the SEC will presumably develop evidence about the knowledge and intent of the TelexFree promoters it has also charged, to show that they knew the company was a pyramid scheme but nonetheless recruited people to sign up.  Those defendants, however, except for defendant Sloan at this stage, assent to the stay.

**B.    This Action Should be Stayed Because the Public Interest Weighs in Favor of Unimpeded Resolution of the Criminal Case**

Dozens of courts have recognized that the interests of justice weigh in favor of staying parallel civil proceedings because of the various ways those proceedings can impede the criminal case.  "Where both civil and criminal proceedings arise out of the same or related transactions the government is ordinarily entitled to a stay of all discovery in the civil case until disposition of the criminal matter."  *United States v. One 1964 Cadillac Coupe DeVille*, 41 F.R.D. 352, 353 (S.D.N.Y. 1966).

This principle has been followed repeatedly in securities cases where criminal and SEC enforcement actions were pending at the same time.  *See, e.g.,,U.S. Sec. & Exch. Comm. v. Purchasers of Secs. In Global Industr., Inc.,* 2012 WL 5505738, *3-6 (S.D.N.Y. Nov. 9, 2012)

(granting intervention and stay of SEC action); *U.S. Sec. & Exch. Comm. v. Gordon*, 2009 WL 2252119, *3-6 (N.D. Okl. July 28, 2009) (same); *U.S. Sec. & Exch. Comm. v. Ott*, 2006 U.S. Dist. Lexis 86541, *6-10 (D.N.J. Nov. 29, 2006) (same, though apparently unopposed); *Nicholas*, 569 F.Supp.2d at 1070 (same); *U.S. Sec. & Exch. Comm. v. Beacon Hill Asset Management LLC*, 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) (same); *In re Worldcom, Inc., Sec. Litig.*, 2002 WL 31729501, *3-10 (S.D.N.Y. Dec. 5, 2002) (same); *U.S. Sec. & Exch. Comm. v. Downe*, 1993 WL 22126, *12-14 (S.D.N.Y. Jan. 26, 1993) (same). And – as several of these courts have noted – a substantial overlap of facts and evidence makes the public's interest in a stay even stronger.

The reasons for the long-standing policy against allowing civil discovery when an overlapping criminal matter is open stem directly from the procedural differences between civil and criminal proceedings. As the Fifth Circuit explained in *Campbell v. Eastland*, an often-cited case in this area,

> The very fact that there is a clear distinction between civil and criminal actions requires a government policy determination of priority: which case should be tried first. <u>Administrative policy gives priority to the public interest in law enforcement. This seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities.</u>

307 F.2d 478, 487 (5th Cir. 1962) (emphasis added). As *Campbell* shows, for at least 50 years courts have recognized that priority should be given to the "public interest in law enforcement." *Id.*; *United States v. Hugo Key & Son, Inc.*, 672 F. Supp. 656, 685 (D.R.I. 1987) (citing "public interest" in law enforcement); *In re Ivan F. Boesky Securities Litig.*, 128 F.R.D. 47, 49 (S.D.N.Y. 1989) ("the *public interest* in the criminal case is entitled to precedence over the civil litigant" (emphasis in original)).

Here, the public unquestionably has a tremendous interest in "law enforcement" – in staying discovery in this case so the government can prosecute TelexFree's principals for fraud without needless interference or variables.  TelexFree had approximately *785,000* investors worldwide.  Even at this early stage, thousands of alleged victims have submitted information and requests for restitution to the government and state authorities.  The government has seized about $140,000,000 from TelexFree accounts and additional millions, as well as physical assets, from Merrill and Wanzeler.  If the government proves that Merrill and Wanzeler committed fraud, these assets will compensate thousands of victims worldwide.   The criminal case will move faster than the civil case, and the public has a right to that resolution unaffected by collateral events here.

The criminal case against TelexFree will operate under a specific set of discovery and procedural rules honed over decades and centuries to balance state and personal interests.  But that balance is upended, and thus the public's and potential victims' rights impacted, if the defendant is able to use civil discovery to evade the criminal rules.  *See, e.g., Beacon Hill Asset Management LLC*, 2003 WL 554618 at *1 (granting stay; "the principal concern with respect to prejudicing the government's criminal investigation is that its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases").  Or, as one court has articulated it,

> It is well established that a litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit to avoid the restrictions on criminal discovery and, thereby, obtain documents [and testimony] he might otherwise not be entitled to for use in his criminal suit.

*Founding Church of Scientology v. Kelley*, 77 F.R.D. 378, 380 (D.D.C. 1977) (citations omitted); *see also Pharaon*, 140 F.R.D. at  639 ("A litigant should not be allowed to make use of the

liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on

criminal discovery.").[5]

Other courts have even deemed it "abusive" to use civil discovery to circumvent criminal

discovery rules.  *See, e.g., United States v. Phillips*, 580 F. Supp. 517, 520 (N.D. Ill. 1984) ("This

abusive tactic is an improper circumvention of the restrictions of the criminal discovery rules.

Protection of the integrity of the criminal justice process fully justifies this Court's taking

remedial action." (granting stay)); *Beacon Hill Asset Management LLC*, 2003 WL 554618 at *1

("principal concern" in allowing civil discovery "is that its targets might abuse civil discovery to

circumvent limitations on discovery in criminal cases" (granting stay)).

A quick survey of criminal discovery procedures shows how parallel civil discovery

effectively nullifies the criminal rules.  For example, the *Jencks* Act says that in criminal cases

the statements of a government witness – such as grand jury testimony or testimony taken by the

SEC – cannot be the subject of subpoenas, discovery, or inspection until that witness has testified

on direct examination.  Rule 16 then specifically carves out *Jencks* material, warning that the

rule does not "authorize the discovery . . . of statements made by government witnesses or

prospective government witnesses except as provided in 18 U.S.C. § 3500 [the *Jencks* Act]."

---

[5]  *See also, e.g., United States v. Mellon Bank, N. A.*, 545 F.2d 869, 872-873 (3rd Cir. 1976) (affirming
stay; noting that "the similarity of the issues [in the civil and criminal matters] left open the possibility
that [the target] might improperly exploit civil discovery for the advancement of his criminal case"); *In re
Eisenberg*, 654 F.2d 1107, 1113-14 (5th Cir. 1981) (observing that allowing civil discovery to proceed
would make litigant "the beneficiary of materials otherwise unavailable under the criminal rules . . . thus
nullifying in effect the criminal discovery limitations"); *Ashworth v. Albers Medical, Inc.*, 229 F.R.D. 527
(S.D. W. Va. 2005) (United States had discernable interest in intervening to prevent civil discovery from
being used to circumvent scope of discovery in criminal matter); *Ott*, 2006 U.S. Dist. LEXIS 86541, at
*3-10 (same); *United States v. GAF Financial Servs.*, 335 F.Supp.2d 1371, 1373 (S.D. Fla. 2004) (civil
forfeiture stayed pursuant to 18 U.S.C. § 981(g)); *Downe*, 1993 WL 22126, at *12–14 (staying securities
action); *In re Ivan F. Boesky Secs. Litig.*, 128 F.R.D. at 49-50 (same); *Hugo Key & Son*, 672 F. Supp. at
657-59 (staying civil action in favor of environmental criminal investigation); *Founding Church of
Scientology,* 77 F.R.D. at 380-81 (blocking interrogatories in favor of ongoing grand jury investigation);
*U.S. Sec. & Exch. Comm. v. Control Metals Corp.*, 57 F.R.D. 56, 57-58 (S.D.N.Y. 1972) (staying
depositions of four grand jury witnesses).

Fed. R. Crim. P. 16 (a)(2).  The public policy favoring the *Jencks* Act is so strong that – beyond the statute and the federal rules – it is *legal error* for a trial court to order the government to disclose *Jencks* material before the statute requires.[6]

        The potential mischief doesn't end there.  For example, Merrill and Wanzeler have no right to know what a witness said in the grand jury unless that witness will testify for the government at trial (or the witness said something exculpatory) – and by extension no right to know what witnesses the government is likely to call at trial or the essentials of the government's case.  But if civil discovery proceeds, Merrill's and Wanzeler's counsel could simply depose the government's anticipated witnesses, ask them if they testified before the grand jury and, if they did, force them to reveal the substance of their testimony.  Counsel could then (a) flesh out the government's anticipated case, including witnesses, (b) make a concerted effort to create the appearance of inconsistencies with former grand jury testimony a witness revealed, and (c) interrogate the witness about his background or other activities in an effort to gather up impeachment material for use later in front of a jury.  *Cf., e.g., In re Worldcom,* 2002 WL 31729501 at *9 (granting stay; citing "U.S. Attorney's significant interest in preserving the usefulness of cooperating defendants as government witnesses"); *Downe*, 1993 WL 22126, at *13 ("[W]here a party or witness in a civil case is cooperating with a grand jury investigation

---

[6]  *See, e.g., In re United States,* 834 F.2d 283, 287 (2nd Cir. 1987) (district courts lack power to order early *Jencks* disclosure); *United States v. Taylor*, 802 F.2d 1108, 1117-18 (9th Cir. 1986) (same); *United States v. Ordaz-Gallardo*, 520 F.Supp.2d 516, 524 (S.D.N.Y. 2007) ("District courts lack the authority to compel early disclosure of Jencks Act material.").

relating to the subject matter of the civil suit, there is a compelling reason to stay discovery of the civil case pending resolution of the criminal investigation.").[7]

The same risk appends to interrogatories targeting these witnesses.  *See, e.g., Bridgeport Harbour Place I, LLC v. Ganim*, 269 F.Supp.2d 6, 10 (D. Conn. 2002) (granting stay because civil discovery would allow defendants to obtain reports and documents about ongoing investigation, such as FBI 302s, recordings and logs, adversely affecting criminal case); *Founding Church of Scientology,* 77 F.R.D. at 380-81 (blocking interrogatories in favor of ongoing grand jury investigation).

Finally, as the above discussion makes clear, the risk of witness harassment and intimidation is real:  in the interest of prosecuting crime, the grand jury required testimony from various people.  They may also be called to testify at a future trial.  They should not *also* be subjected to hostile depositions and interrogatories along the way – conducted by lawyers motivated to "mark them up" before they later testify before a jury – when it can probably be avoided entirely by first resolving the criminal case.  *See, e.g., U.S. Sec. & Exch. Comm. v. Nicholas*, 569 F.Supp.2d 1065, 1071-72 (C.D.Cal. 2008) (granting intervention and staying SEC action; noting that criminal discovery rules are narrower than civil ones because they are designed, *inter alia*, to protect witnesses from "harassment and intimidation").

      **C.**      **Because the Civil and Criminal Cases are Based on the Same Facts, and the Civil Case has Many Parties, any Stay of Discovery Should Cover All Discovery, Instead of Proceeding by Category or Request by Request**

In the context of motions to stay civil proceedings, courts sometimes seek to avoid a "blanket" stay of discovery, favoring a more specific approach.  *See, e.g., Beacon Hill Asset*

---

[7] A similar concern applies to defense discovery requests to the SEC itself.  SEC disclosure of its own witness interviews or testimony would again hand the defense Jencks material and other information that it would not normally receive at this stage in the criminal case.

*Management LLC*, 2003 WL 554618 at *2 (granting stay of Rule 26(a)(i)(A) discovery and of discovery pertaining to "any person the U.S. Attorney's Office certifies may be called as a witness in the criminal case"); *U.S. Sec. & Exch. Comm. v. Doody*, 186 F.Supp.2d 379, 382 (S.D.N.Y. 2002) (same).

Because of the near-total overlap of underlying facts in this case, the government respectfully suggests that a complete stay is simpler, more efficient, and so more beneficial for the litigants and the Court. Any discovery among the SEC, TelexFree, Merrill, Wanzeler, Labriola, and Craft would implicate the government's interests in the criminal case, as would discovery from certain other third-party witnesses. Discovery targeting the TelexFree *promoters* the SEC has charged (Vasconcelos, de la Rosa, Crosby and Sloan) still implicates the government's case, but less so. All of those parties but Sloan, however, has assented to a stay, and all would derive the financial benefits of it. (As to Sloan, she opposes a stay for now but is willing to consider it again after her motion to dismiss is resolved.)

Proceeding with discovery in some categories but not others – or, alternatively, simply ruling on a stay each time a specific deposition notice, set of interrogatories or document request is served – would also inevitably result in piecemeal litigation. There are essentially nine separate parties to this case, plus the U.S. Attorney's Office as intervenor. Reviewing disputes about whether discovery falls within a barred category, or whether a specific discovery request should be subject to a stay under current law, would unnecessarily drain the litigants' and the Court's resources. *See, e.g., Downe*, 1993 WL 22126 at *14 (opting for complete, instead of partial, stay, to avoid "unfairness" to certain civil defendants and "duplication of effort").

**D.    No Defendant in This Case Will Be Prejudiced by a Stay, Further Tilting the Balance of Interests in Favor of One, and the Judicial Efficiencies are Clear**

A stay is warranted for the public policy reasons summarized above.  But, in addition, a stay would not prejudice any defendant.  Far from it – a stay would allow the civil defendants to avoid substantial costs while the criminal case proceeds.  As noted above, many of the individual defendants here – including Merrill and Wanzeler – are worried about not being able to pay their legal fees, which is likely in part why all (except Sloan and Merrill) *assent* to a stay.  As for Sloan, she may agree after her motion to dismiss is resolved.  As to Merrill, he is the only one who stands to benefit in the criminal matter if the civil case proceeds.

Moreover, a stay would not materially prolong the period in which Merrill, Wanzeler or other defendants must contend with one or the other government enforcement action.  Resolution of the criminal case would surely dramatically expedite resolution of this civil case.  Also, as to Merrill and Wanzeler, this is not a situation in which they have endured years living with a government investigation – both men were wholly ignorant of the government's and the SEC's activities until April 2014.

Finally, a stay of discovery alone will not prevent any defendant from pursuing a dispositive motion or litigating the current asset freeze with the SEC.  Thus, if some defendant is improperly implicated in this case, the stay would not prevent him or her from moving for relief; if some defendant has had assets frozen without justification, the stay would not prevent negotiating or litigating that issue with the SEC.

As to the Court itself, judicial efficiency would seem to support the stay.  As Judge Cote noted in the *Worldcom* securities litigation,

> The Court shares with all parties an interest in the efficient resolution of the
> instant actions.  Nonetheless, a concern for judicial efficiency does not necessarily
> militate against the granting of a stay. . . .  The conviction of a civil defendant as a

<u>result of the entry of a plea or following a trial can contribute significantly to the narrowing of issues in dispute in the overlapping civil cases and promote settlement of civil litigation not only by that defendant but also by co-defendants who do not face criminal charges.</u> *See Rosenthal v. Giuliani,* 2001 WL 121944, *2 (S.D.N.Y. Feb. 9, 2001) ("[A] stay in the action will streamline later civil discovery since transcripts from the criminal case will be available to the civil parties.").

*In re Worldcom*, 2002 WL 31729501 at *8 (emphasis added; citations omitted) (finding stay "particularly compelling" in light of factual overlap and U.S. Attorney's Office's request). A stay would allow not just the litigants, but the Court, to avoid needless work, without prejudice to any defendant or to the overall public interest in justice being served.

<u>CONCLUSION</u>

For the foregoing reasons, the government respectfully moves for permission to intervene in this case, and for a stay of discovery pending resolution of the parallel criminal proceedings.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By:    /s/ *Andrew E. Lelling*
CORY S. FLASHNER
ANDREW E. LELLING
Assistant U.S. Attorneys

Date:   September 3, 2014

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants, on September 3, 2014.

 /s/ *Andrew E. Lelling*
ANDREW E. LELLING
Assistant U.S. Attorney