United States District Court
District of Massachusetts

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>  Plaintiff,<br><br>  v.<br><br>TELEXFREE, INC.,<br>TELEXFREE LLC,<br>JAMES M. MERRILL,<br>CARLOS N. WANZELER,<br>STEVEN M. LABRIOLA,<br>JOSEPH H. CRAFT,<br>SANDERLEY RODRIGUES DE VASCONCELOS,<br>SANTIAGO DE LA ROSA,<br>RANDY N. CROSBY and<br>FAITH R. SLOAN,<br><br>  Defendants,<br><br> and<br><br>TELEXFREE FINANCIAL, INC.,<br>TELEXELECTRIC, LLC and<br>TELEX MOBILE HOLDINGS, INC.,<br><br>  Relief Defendants. | Civil Action No.<br>14-11858-NMG |

MEMORANDUM & ORDER

GORTON, J.

I. **Background**

On April 15, 2014 the Securities and Exchange Commission ("SEC") filed this civil enforcement action against five corporate defendants and eight individual defendants who were

-1-

allegedly involved in a pyramid scheme.  The scheme defrauded consumers who believed they were investing in a "Voice over Internet Protocol" (VoIP) telephone service.  Defendant Sanderley Rodrigues de Vasconcelos ("Rodrigues") allegedly participated in the scheme as a "promoter" who recruited Brazilian and Dominican immigrants to invest in the company.

This lawsuit has been stayed pending the resolution of a parallel criminal proceeding brought by the U.S. Department of Justice against two of Rodrigues's co-defendants (U.S. v. Wanzeler, 14-cr-40028-TSH).  Despite the stay, two orders currently remain in place against Rodrigues freezing his assets and requiring him to provide the SEC with a full accounting of his assets and transactions.  On August 12, 2015 the SEC filed a motion to hold Rodrigues in contempt (Docket No. 313), claiming that Rodrigues has yet to comply with either order.

**A.   The Asset Freeze**

**1.  The Asset Freeze Orders**

On April 16, 2014 another session of this Court issued a Temporary Restraining Order freezing the assets of several defendants and providing other equitable relief ("the TRO") (Docket No. 13).  The Court found that there was a "strong indication" that if Rodrigues and the other defendants were not restrained by the Court, they may dissipate and conceal assets

that could be subject to disgorgement in the case.  The order
required the defendants to:

> hold and retain [all] funds and other assets for their
> direct or indirect benefit, under their direct or
> indirect control, or over which they exercise actual
> or apparent investment or other authority in whatever
> form such assets may presently exist and wherever
> located.

In addition, it restrained the defendants from:

> taking any actions to withdraw, sell, pay, transfer,
> dissipate, assign, pledge, alienate, encumber, dispose
> of, or diminish the value of in any way ... any funds
> and other assets

Notice of the freeze was sent to all financial institutions
in which Rodrigues was believed to have direct or indirect
control over accounts.

On April 23, 2014 the TRO was extended until April 25, 2014
via electronic order.  On April 25, 2014 this session of the
Court held a hearing and entered an order continuing the TRO
until May 8, 2014.  On May 8, 2014, the Court entered a
Preliminary Injunction freezing assets and ordering other
equitable relief (Docket No. 89) against Rodrigues and others.

### 2. Alleged Violations of Defendant Rodrigues

In its motion to hold Rodrigues in contempt, the SEC
alleges that Rodrigues has violated the temporary restraining
order and preliminary injunction in numerous ways, including:
1) conducting financial transactions through several shell
companies, 2) withdrawing money from his personal accounts,

3) using an online payment service provider to conduct transactions with assets from accounts subject to the freeze, 4) opening new accounts at different banks and conducting transactions through those accounts, 5) selling and purchasing luxury automobiles and 6) transferring real estate to a shell company.

The SEC alleges that Rodrigues was able to conduct those transactions in spite of the freeze because he had also violated the Court order requiring him to provide an accounting of all of his assets.  That order required defendant to disclose to the SEC all bank accounts and other assets that were subject to his direct or indirect control as of the date of the original asset freeze.  As a result of Rodrigues's failure to comply with the accounting order, the SEC alleges, it was unaware of many of his assets and was unable to notify the custodial institutions.

**B.   The Required Accounting**

**1.  The Orders Requiring Accounting**

The April 16, 2014 Temporary Restraining Order (Docket No. 13) contained a provision requiring each of the defendants to submit an accounting that, among other things, identified all of their assets and recent transfers larger than $500.  Rodrigues failed to submit such an accounting.

The May 8, 2014 Preliminary Injunction (Docket No. 89) reiterated that requirement.  Rodrigues again failed to submit

the required accounting.  More than one year later, this Court entered the June 10, 2015 Order ("Order to Provide Accountings") (Docket No. 304).  That order required Rodrigues to submit the original accounting, provide a list of current assets and describe all transactions over $500 that he had conducted since the TRO was entered.  Rodrigues finally submitted an accounting on July 30, 2015.

### 2. Alleged Violations of Defendant Rodrigues

In addition to allegations of Rodrigues's repeated failures to submit an accounting within the required deadlines, the SEC's contempt motion charges that the accounting Rodrigues eventually did provide is deficient in several ways.  The SEC has since informed the Court, however, that it has obtained the missing information through other means and therefore no longer seeks an order to have Rodrigues provide the withheld information.

## II.  Analysis

### A. Legal Standard

Civil contempt is a sanction meant to enforce compliance with an order of the court. McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949).  The Court may hold a party in civil contempt if the movant has shown that (1) the party to be held in contempt had notice of the violated order, (2) the order is clear and unambiguous, (3) the party to be held in contempt had the ability to comply with the order and (4) the party to be

held in contempt actually violated the order. Hawkins v. Dep't of Health & Human Servs. for New Hampshire, Com'r, 665 F.3d 25, 31 (1st Cir. 2012). The moving party must prove these four points by clear and convincing evidence. Id.

In this case, Rodrigues was notified of each of the orders entered against him.  Those orders contained detailed and specific language as to the assets that were frozen and the information that Rodrigues was to provide in his accounting. The orders require defendant to leave untouched accounts under his direct or indirect control and to provide information on accounts under his control.  The SEC has also provided numerous exhibits of documentary and testimonial evidence demonstrating specifically how defendant violated the orders.

Rodrigues raises several arguments disputing whether he had actual notice of the orders, the first prong of the civil contempt protocol.  In addition, he asserts that he is unable to comply with the orders because doing so would require him to waive his Fifth Amendment privilege against self-incrimination. He further contends that if the Court were to hold him in contempt, he would be unable to purge the contempt without waiving his Fifth Amendment right.

**B. Discussion**

**1. Actual Notice of the Subject Orders**

Rodrigues raises three arguments with respect to notice in his opposition. First, he asserts that the TRO and preliminary injunction are very complex and thus he was unable to understand them. Consequently, he avers, he was left without notice of the orders and therefore unable to comply with them. Second, defendant explains that he was unable to understand the orders due to his limited comprehension of English. Finally, he declares that he did not have assistance of counsel to aid him in understanding the orders until the deadlines for compliance with both the TRO and the preliminary injunction had passed, as evidenced by the fact that his counsel did not enter an appearance until June 13, 2014.

His arguments are unconvincing. Rodrigues was subject to a very similar temporary restraining order and preliminary injunction in a 2006 civil enforcement action also brought by the SEC. Thus, however complex were the requirements of the orders in this case, they were not unfamiliar. Furthermore, the fact that Rodrigues assented to the Order to Provide Accountings and Carve-Out demonstrates that he had sufficient notice. As to the language barrier, the SEC submitted an affidavit of a bank manager who frequently interacted with Rodrigues stating that

Rodrigues speaks fluent English.  It also submitted videos of
Rodrigues speaking English.

     While Rodrigues did not retain counsel until after the
temporary restraining order and preliminary injunction had been
entered, he was represented at the time he consented to the
Order to Provide Accountings.  Thereafter, it took him more than
13 months to file his first response and even then he did not
restore all of the assets removed in violation of the asset
freeze.  Thus, lack of representation does not suffice as an
excuse for his lack of compliance.

     In a supplemental memorandum submitted to the Court,
Rodrigues has also argued that he did not have actual notice of
the April 23, 2014 and April 25, 2014 extensions of the TRO.
Because the Court, at a hearing held on October 16, 2015, made a
finding of fact that Rodrigues had actual notice of those
extensions, that argument will be discredited here.

### 2. Fifth Amendment Privilege

     Rodrigues also asserts that the Court should not hold him
in contempt because to comply with the Order to Provide
Accountings would require him to divulge information which he
claims is protected by his Fifth Amendment privilege against
self-incrimination.

     Invocation of the Fifth Amendment privilege against self-
incrimination requires a showing by the defendant that (1) the

-8-

statements in question are testimonial, (2) those statements are compelled and (3) the statements pose a real danger of criminal liability. See United States v. Allee, 888 F.2d 208, 212 (1st Cir. 1989). The parties do not dispute that the first two requirements of this test have been met. Rather, their disagreement concerns 1) whether defendant has made a sufficient showing of a real prospect of criminal liability and 2) whether he waived his Fifth Amendment right either by consenting to the Order to Provide Accountings or by providing a partial accounting.

Rodrigues argues that providing a full accounting of his assets and transactions would require him to disclose information that could incriminate him in several potential or actual criminal proceedings. Rodrigues is currently the subject of a criminal prosecution in a separate federal visa fraud case, U.S. v. Rodrigues (15-10227). He reports that he is also being investigated by the Massachusetts Attorney General with respect to another of his business ventures. In addition, he contends that he may still be under investigation for potential criminal charges related to the specific conduct that underlies this civil enforcement action.

Whether defendant has made a sufficient showing to invoke the Fifth Amendment is, however, irrelevant. Rodrigues waived his right against self-incrimination by consenting to the Order

-9-

to Provide Accountings. Securities and Exchange Commission v.
Oxford Capital Secruities, Inc., 794 F.Supp. 104, 108 (S.D.N.Y.
1992); Securities and Exchange Commission v. Halligiannis, 470
F.Supp.2d 373, 378 n.1 (S.D.N.Y. 2007).  In that proceeding,
Rodrigues explicitly agreed to provide the very information he
is now claiming to be privileged. Order to Provide Accountings
at §§ 1-2.  Defendant was represented by counsel, who negotiated
the language of the order with the SEC.  In exchange for
agreeing to provide the required accountings, Rodrigues received
a carve-out of his frozen assets to pay for his bail in the
separate criminal visa fraud case. Order to Provide Accountings
at § 3.  Defendant could have conditioned his agreement on the
preservation of his Fifth Amendment rights and, while the SEC
may not have agreed to that condition, he would still have had
the option of forgoing the bail money and refusing to consent to
the order.

     Furthermore, defendant may not raise his Fifth Amendment
defense to production for the first time in a contempt
proceeding.  Oxford Capital Secruities, 794 F.Supp. at 108;
United States v. Fein, No. M-18-304, 1985 WL 254, at *2
(S.D.N.Y. Feb. 6, 1985); Maine v. Richard, 697 A.2d 410, 416
(Me. 1997); Tennessee ex rel. Gibbons v. Smart, No. W2007-01768-
COA-R3-CV, 2008 Tenn. Ct. App. WL 4491729, at *9 (Tenn. Ct. App.
Oct. 8, 2008); see also United States v. Rylander, 460 U.S. 752,

757 (1983) (defendant may not raise for the first time in a
contempt proceeding a defense that could have been raised during
prior enforcement proceeding).  Even assuming _arguendo_ that
Rodrigues was unable to raise his Fifth Amendment privilege when
the TRO and May 8, 2014 Preliminary Injunction were entered due
to his lack of representation by counsel at that time, Rodrigues
should have asserted that privilege when the SEC moved to enter
the Order to Provide Accountings, when he was most assuredly
represented by counsel.

Defendant contends that even if he had agreed to waive his
Fifth Amendment privilege by consenting to the Order to Provide
Accountings, he would still not be precluded from asserting the
privilege in this proceeding.  He relies on Securities and
Exchange Commission v. ARVCO Capital Research, in which the
United States District Court for the District of Nevada refused
to find a waiver of a third-party witness's Fifth Amendment
right despite the witness's prior statement that he would not
assert the privilege. No. 3:12-cv-00221-MMD-WGC, 2014 U.S. Dist.
WL 5106100, at *12 (D. Nev. Oct. 10, 2014).  Several aspects of
that case make it factually inapposite.

First, when the defendant in ARVCO stated that he would not
assert his Fifth Amendment privilege in a future deposition, he
did so based on the belief that he would later receive immunity
from the government which would obviate his need to assert the

-11-

privilege.  No such understanding underlay Rodrigues's consent
to the Order to Provide Accountings.  Second, ARVCO involved a
blanket statement waiving the privilege which was made orally
during a hearing while the parties were discussing what
essentially amounted to a scheduling issue.  The waiver in this
case is both narrower in scope and made under circumstances that
more adequately reflect the gravity of Rodrigues's agreement.
Rodrigues negotiated and signed an order containing a detailed
list of specific kinds of information which he would be required
to disclose.  His consent to the disclosure was also provided in
writing rather than orally.

The ARVCO Court faced, as does this Court, a question of
first impression in its circuit.  That Court's analysis relied
on two decisions by the U.S. Court of Appeals for the Ninth
Circuit ("the Ninth Circuit"), one of which addressed the
attorney-client privilege rather than the Fifth Amendment
privilege against self-incrimination and the other of which
implied without deciding, in dicta consigned to a footnote, that
the same doctrine may apply in the context of the Fifth
Amendment. Id. at *9-11 (citing Tennenbaum v. Deloitte & Touche,
77 F.3d 337 (9th Cir. 1996); United States v. Anderson, 79 F.3d
1522, 1527 n.7 (9th Cir. 1996)).  While "the focal point of
privilege waiver analysis should be the holder's disclosure of
privileged communications," Tennenbaum, 77 F.3d at 339, the

Fifth Amendment privilege can also be waived by the holder's failure to assert the privilege. Due to the differences between the two doctrines, this Court declines defendant's invitation to follow the ARVCO Court by importing the Ninth Circuit's doctrine on the waiver of the attorney-client privilege into the context of the Fifth Amendment. As such, defendant's denial of waiver is unavailing.

Finally, by signing the Order to Provide Accountings, defendant waived his Fifth Amendment privilege against production with respect to certain potentially incriminating asset information. Because defendant has already agreed to disclose that information, he may not raise a Fifth Amendment defense against such disclosure through different means. Thus, defendant has also waived his Fifth Amendment privilege with respect to the restoration of assets dissipated in violation of the TRO and the May 8, 2014 Preliminary Injunction. By restoring such assets, Rodrigues would reveal only the same information that would have been revealed by the accounting which he agreed to provide.

Although the Order to Provide Accountings did not address Rodrigues's separate obligation related to the asset freeze, his consent to provide the information in the accounting waived his Fifth Amendment privilege with respect to that information regardless of the means through which it is disclosed. It is

-13-

therefore immaterial that the SEC no longer requests that the Court hold defendant in contempt for his failure to provide an accounting.  Ordering Rodrigues to purge his contempt of the asset freeze by restoring dissipated assets will not force him to divulge protected information because he has already waived his right to protection under the Fifth Amendment with respect to that information.

The Court finds that the legal standard for civil contempt has been met and that defendant is not entitled to assert a Fifth Amendment privilege in support of his noncompliance with existing orders.

### ORDER

In accordance with the foregoing, plaintiff's motion to hold defendant Sanderley Rodrigues de Vasconcelos in contempt (Docket No. 313) is **ALLOWED**.  Sanctions will, however, be held in abeyance for the time being.

Defendant shall, on or before January 15, 2016, restore all funds and other assets transferred or disposed of in violation of the asset freeze as follows:

(a)  restore the following funds that he dissipated either through removing cash from accounts or selling cars:

| (i) | $211,473 | withdrawn from JP Morgan account xxxx7958, |
| (ii) | $ 21,600 | withdrawn from BMO Harris accounts for SMA Logistics and ZVX Investment, |
| (iii) | $ 22,200 | received with respect to the sale of the 2007 Mercedes Benz CLS and |
| (iv) | $ 79,700 | received with respect to the sale of the Ferrari F340; |
| | $334,973 | Total; and |

(b)  with respect to the wrongfully transferred properties in West Palm Beach, Florida at 1103 18th Street 1, 1014 17th Street and 711 Division Ave., defendant shall either obtain the reconveyance of those properties, remit funds equal to the market value thereof or provide the Court with a detailed plan as to how he will otherwise cure his contempt in relation to the transfer of those properties.

In default of full compliance with the provisions of subparagraphs (a) and (b) hereof, defendant's bail will be revoked and he will be incarcerated for contempt of orders of this Court.

**So ordered.**

                                    /s/ Nathaniel M. Gorton
                                    Nathaniel M. Gorton
                                    United States District Judge

Dated December 18, 2015

                            -15-